IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| KATHERINE ROUSE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:11-cv-549 |
| DUKE UNIVERSITY and LARRY MONETA, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The Plaintiff, Katherine Rouse, filed suit in state court against Defendants Duke University and Dr. Larry Moneta alleging negligence, negligent and intentional infliction of emotional distress, creation and maintenance of a hostile educational environment, and breach of contract. The Defendants filed a Motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, contending that Ms. Rouse's action is barred by the applicable statute of limitations and that she has failed to state a claim for which relief can be granted. The Court finds that the Motion should be denied in part and granted in part.

**FACTUAL BACKGROUND**

In evaluating a Rule 12(c) motion for judgment on the pleadings, the court must view the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the non-moving party. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). A Rule 12(c) motion is evaluated under the same standard as a Rule 12(b)(6) motion. *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009); *Tiepet, Inc., v. Eastman Chem. Co.*, No. 1:02CV00722,

2003 U.S. Dist. LEXIS 14425, at *1-2 (M.D.N.C. Aug. 15, 2003). Thus, to survive a motion at this stage, the complaint must contain sufficient factual matter, accepted as true and viewed in the light most favorable to the plaintiff, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The factual recitation which follows is thus taken from the Amended Complaint.

Ms. Rouse was a freshman at Duke University when, on February 11, 2007, she was raped at a party. (Doc. 5 at 2 ¶ 9.) She immediately reported the rape to the authorities and was treated at the emergency room. (*Id.* at 3 ¶ 11.) Shortly thereafter, Defendant Dr. Moneta issued a public statement "downplay[ing] [the] allegation of rape" and suggested that Ms. Rouse was to blame for her own rape. (*Id.* ¶ 12.) This interview was broadcast nationwide with numerous follow-up media reports repeating Dr. Moneta's false implied statements. (*Id.* ¶¶ 13-14.)

Ms. Rouse alleges that Dr. Moneta made these statements despite physical evidence supporting her allegations of rape. (*Id.* ¶ 11.) Ms. Rouse alleges that Duke University and Dr. Moneta were motivated to discredit her because she was a white woman accusing an African-American man of rape at a time when there was significant negative publicity over Duke's handling of an earlier rape allegation by an African-American woman against several white Duke lacrosse team members. (*Id.* ¶ 13.) She contends that Dr. Moneta's statements were the start of a hostile educational environment against her that was maintained by the University until her involuntary withdrawal. (*Id. passim*.)

After the rape, Ms. Rouse received a temporary leave from school to obtain medical and psychological treatment at home resulting from the rape and from the defamatory public statements of Dr. Moneta. (*Id.* at 4 ¶ 17.) When she returned to school a week later, she found the administration at Duke unsupportive of her effort to return to school (*id.* ¶¶ 19-20), and the

2

University continued to foster a hostile educational environment against her in unspecified ways. At her request, Duke granted her a leave of absence, but refused to allow her to complete her current course work from home. (*Id.* at 4-5 ¶ 23.)

While on her leave of absence, Ms. Rouse received additional medical and psychological services at home (*id.* at 5 ¶ 26) and was able to return to Duke in the fall of 2007. (*Id.* ¶ 28.) In the interim, Duke did not investigate, sanction, or punish the fraternity or its members who hosted the party during which Ms. Rouse was raped. (*Id.* ¶ 25.)

After returning to school in the fall of 2007, Ms. Rouse found that the educational environment at Duke was still hostile to her. (*Id.* ¶ 29.) She was not allowed to register for the courses she wished to take in the 2008 spring semester and found that Duke had done nothing to alleviate the hostile educational environment she faced. (*Id.* ¶¶ 29-30.) On November 8, 2007, Ms. Rouse met with Dean McKay to discuss the stress she was under as a result of the hostile educational environment. (*Id.* ¶ 32.) She inquired about taking courses at another university during the spring semester and then returning to Duke in the fall when perhaps time and distance would make the situation more tolerable. (*Id.*) Dean McKay did not propose any action to ameliorate the hostile environment, but instead encouraged Ms. Rouse to leave school. (*Id.* ¶ 33.) Dean McKay directed her to send an e-mail stating her intention to transfer to another university. (*Id.*)

At Dean McKay's request, Ms. Rouse sent an e-mail stating the intent to transfer to Fordham University to take classes for the spring semester. (*Id.* ¶ 34.) Ms. Rouse did not intend to transfer permanently and did not know that her e-mail would have any effect on her eligibility to return to Duke in the fall. (*Id.* ¶¶ 35, 37.)

3

After Ms. Rouse completed her coursework for the fall semester, she received a letter dated December 18, 2007, from Duke notifying her that her e-mail functioned as a request to voluntarily withdraw from Duke to complete her undergraduate degree elsewhere and that she had therefore forfeited her eligibility to seek readmission to Duke University. (*Id.* ¶ 36.) Permanent withdrawal from the University was not what Ms. Rouse sought or wanted. (*Id.* ¶¶ 37, 38; *id.* at 12 ¶ 69.)

## PROCEDURAL SUMMARY

On December 17, 2010, Ms. Rouse filed a request to extend time to serve a complaint. This lawsuit was filed on January 5, 2011, and an Amended Complaint was filed on June 13, 2011.[1] In the Amended Complaint, Ms. Rouse asserts causes of action against Dr. Moneta and Duke for negligence (*id.* at 8-9 ¶¶ 48-52), negligent infliction of emotional distress (*id.* at 12-13 ¶¶ 67-70), and intentional infliction of emotional distress (*id.* at 13-14 ¶¶ 71-77). Ms. Rouse also asserts causes of action against Duke for creating and then fostering a hostile educational environment because of her race and gender (*id.* 9-10 ¶¶ 53- 57) and for breach of contract. (*Id.* at 10-12 ¶¶ 58-66.)

At the close of the pleadings, the Defendants filed the instant Motion asserting that all of Ms. Rouse's claims are barred by the applicable statutes of limitation and that the Amended Complaint fails to state any claims for which relief may be granted.

## ANALYSIS

The Federal Rules of Civil Procedure expressly allow defendants to raise a "failure to state a claim upon which relief can be granted" defense in a Rule 12(c) motion. Fed. R. Civ. P. 12(h)(2)(B). Courts also routinely and appropriately dispose of cases on statute-of-limitations

---

[1] The Amended Complaint added a claim under Title IX, 20 U.S.C. §§ 1681-88, giving rise to federal jurisdiction, and the Defendants removed the case to this Court.

4

grounds at the Rule 12(c) stage when the pleadings themselves contain sufficient information to make a ruling. *See, e.g.*, *West v. ITT Cont'l Baking Co.,* 683 F.2d 845, 846 (4th Cir. 1982) (affirming dismissal of case on Rule 12(c) motion when "the facts alleged" showed it was barred by the statute-of-limitations ground); *Jones v. GE Life & Annuity Assurance Co.*, No. 1:03CV241, 2004 U.S. Dist. LEXIS 5297, at *5 (M.D.N.C. Mar. 17, 2004) (ruling on statute-of-limitations grounds where the "pleadings establish" that Plaintiff's claim "is barred by the applicable limitations"); *see also Tollison v. B & J Mach. Co.*, 812 F. Supp. 618, 619 (D.S.C. 1993) ("A motion under Rule 12(c) is an appropriate procedure when the statute of limitations is alleged to provide an effective bar against a plaintiff's claims.").

A. <u>Negligence</u>

Ms. Rouse claims that Duke University and Dr. Moneta acted negligently in handling the response to her rape. Specifically, Ms. Rouse alleges that "[i]n undertaking to make public statements on behalf of the University, Moneta and other University officials had a duty to exercise care in doing so." (Doc. 5 at 8 ¶ 49.) Ms. Rouse argues that the University and Dr. Moneta breached the duty of care when 1) Dr. Moneta made public statements concerning the rape of Ms. Rouse; 2) the University fostered a hostile educational environment after Ms. Rouse reported her rape; 3) the University failed to accommodate an unspecified disability; and 4) the University failed to avoid depriving Ms. Rouse "of rights guaranteed by law." (*Id.* at 8-9 ¶ 50.)

The defendants contend that Ms. Rouse's negligence claims are barred by the statute of limitations. In North Carolina, the statute of limitations for a negligence claim is three years. *See* N.C. Gen. Stat. § 1-52(16); *Pompano Masonry Corp. v. HDR Architecture, Inc*., 165 N.C. App. 401, 409, 598 S.E.2d 608, 613 (2004). North Carolina courts have framed the issue of accrual in various ways in different cases. In *Pompano Masonry Corp*., the court held that a

5

negligence claim accrues and the limitations period begins running "at the time the plaintiff discovers, or reasonably should have discovered, the injury or damage." 165 N.C. App. at 409, 598 S.E.2d at 613. In *Scott & Jones, Inc. v. Carlton Ins. Agency, Inc.*, the court held that a negligence cause of action "accrues when the wrong giving rise to the right to bring suit is committed, even though the damages at that time be nominal and the injuries cannot be discovered until a later date." 196 N.C. App. 290, 298, 677 S.E.2d 848, 853 (2009).

In this case, the differing standards are largely immaterial, as Ms. Rouse specifically and repeatedly alleges that she suffered severe emotional distress in February 2007 and the months thereafter as a result of Dr. Moneta's public statements. Ms. Rouse's argument in a brief that she did not discover any injury or damage from the negligence "until her receipt of the University's letter[] sometime after December 18, 2007" (Doc. 22 at 10) is contradicted by the allegations in her Amended Complaint. (*E.g.*, Doc. 5 at 4 ¶ 17.) A court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (internal quotation marks omitted). Rather, the allegations in the pleadings govern. *Lincoln Nat'l Life Ins. Co. v. Condellone*, No. 1:07CV00800, 2008 U.S. Dist. LEXIS 77617, at *5 (M.D.N.C. Oct. 3, 2008) (noting that "the district court should base its decision [in a Rule 12(c) motion] solely on the information contained in the pleadings"); *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (noting that the plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"). Ms. Rouse's claims of negligence against both defendants based on Dr. Moneta's statements are, therefore, barred by the statute of limitations.

Ms. Rouse also claims that the University negligently created and maintained a hostile environment. Almost all of the allegedly negligent acts, including Dr. Moneta's statements, also occurred more than three years ago, and thus any claim based on these statements, or any alleged negligent action occurring more than three years ago is barred by the statute of limitations.

The only negligent act Ms. Rouse alleges occurred on or after December 17, 2007, is the sending of the letter by Duke stating its position that she had withdrawn from the University and would not be allowed to re-enroll later. While not completely clear, it appears that Ms. Rouse alleges that Duke was negligent in its dealings with her which led to her unintentional withdrawal or that Duke was negligent in concluding that she was not eligible to return to school. There are certainly a number of potential problems with this claim, but the allegations are sufficient to withstand a Rule 12(c) motion. Therefore, the Court will deny the motion as to this aspect of Ms. Rouse's negligence claim against Duke. As Dr. Moneta is not alleged to have had anything to do with the December event, the allegations are insufficient to state a negligence cause of action against him.

B. Infliction of Emotional Distress

Ms. Rouse claims that the defendants intentionally or, in the alternative, negligently inflicted emotional distress on her. The defendants contend that these claims are also barred by the three-year statute of limitations. *See also* N.C. Gen. Stat. § 1-52(5); *Carter v. Rockingham Cnty. Bd. of Educ.*, 158 N.C. App. 687, 689, 582 S.E.2d 69, 72 (2003).

The limitations period for an emotional-distress claim begins to run when the "conduct of the defendant causes extreme [or severe] emotional distress." *Soderlund v. Kuch*, 143 N.C. App. 361, 367, 546 S.E.2d 632, 637 (2001) (internal quotation marks omitted). The time of the injury for limitations purposes begins when the emotional distress "could have been generally

recognized and diagnosed by professionals trained to do so." *Id.* at 368, 546 S.E.2d at 637 (emphasis omitted) (internal quotation marks omitted); *see Spencer v. Town of Chapel Hill*, 290 F. Supp. 2d 655, 661 (M.D.N.C. 2003) (holding that limitations period begins when emotional distress is suffered, not when it is diagnosed).

Ms. Rouse alleges that she suffered from emotional distress immediately after Dr. Moneta's statements, as a result of which she took a personal leave of absence one week after her assault, in February 2007. (Doc. 5 at 4 ¶¶ 17-18.) She alleges that the emotional distress continued throughout the spring 2007 and fall 2007 semesters as Duke's wrongful actions continued. To the extent she seeks to recover for negligent or intentional infliction of emotional distress as a result of Dr. Moneta's or Duke's actions before December 17, 2007, those claims are time-barred, as she alleges in the Amended Complaint that she suffered emotional distress at the time. For the reasons stated *supra*, however, to the extent that Ms. Rouse claims infliction of emotional distress as a result of the December 18 letter, those claims are not barred by the statute of limitations as the letter was sent less than three years before this lawsuit began.[2]

The statute of limitations bars recovery against Dr. Moneta for any infliction of emotional distress as a result of his actions in February. Dr. Moneta is not alleged to have had anything to do with the December events. Thus the complaint fails to state a claim against him for either negligent infliction of emotional distress or intentional infliction of emotional distress.

Duke also asserts that the Amended Complaint is insufficient to state causes of action for negligent and intentional infliction of emotional distress. As noted *supra*, the content of the letter and Duke's interactions with Ms. Rouse before sending the letter are, given Ms. Rouse's

---

[2] This may raise some difficult issues about when the emotional distress manifested itself and how to "separate out" any emotional distress arising from the rape itself, that arising from the December 18 letter, and that arising from events in between. These can be addressed more fully at a later date when the record is more fully developed.

8

surrounding factual allegations, arguably negligent. *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.,* 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990) (holding that plaintiff must allege that defendant engaged in negligent conduct as an element of negligent infliction of emotional distress). The negligent-infliction-of-emotional-distress claim based on the December 18 letter may proceed against Duke. That leaves the intentional-infliction-of-emotional-distress claim.

"The essential elements of an action for intentional infliction of emotional distress are 1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (internal quotation marks omitted). "The determination whether conduct rises to the level of extreme and outrageous behavior is a question of law." *Foster v. Crandell*, 181 N.C. App. 152, 168, 638 S.E.2d 526, 537 (2007).

To be extreme and outrageous, conduct must "go beyond all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311, *cert. denied*, 314 N.C. 114, 332 S.E.2d 479 (1985). The North Carolina courts have set a high threshold for a finding that conduct meets the standard. *Dobson v. Harris*, 134 N.C. App. 573, 578-579, 521 S.E.2d 710, 715 (1999) (making exaggerated report of child abuse to the Department of Social Services not extreme and outrageous), *rev'd on other grounds*, 352 N.C. 77, 530 S.E.2d 829 (2000); *compare Eubanks v. State Farm Fire & Cas. Co.*, 126 N.C. App. 483, 487, 485 S.E.2d 870, 872 (soliciting the commission of murder is an extreme and outrageous act), *disc. review denied*, 347 N.C. 265, 493 S.E.2d 452 (1997), *and Miller v. Brooks*, 123 N.C. App. 20, 30, 472 S.E.2d 350, 356 (1996) (breaking into the plaintiff's house and installing a hidden video camera may be extreme and outrageous conduct), *disc. review denied*, 345 N.C. 344, 483 S.E.2d 172 (1997), *with Hogan v.*

*Forsyth Country Club Co.*, 79 N.C. App. 483, 491, 494, 340 S.E.2d 116, 122, 123 (1986) (requiring pregnant plaintiff/employee to carry heavy loads and refusing to allow her leave to go to the hospital is not extreme and outrageous conduct, but unwelcome sexual advances coupled with threats of bodily injury are), *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140 (1986).

Ms. Rouse's Amended Complaint as a whole alleges that after Duke wrongfully and publicly suggested that she was to blame for being raped (Doc. 5 at 3 ¶ 12), and knowing that Ms. Rouse was emotionally vulnerable and was suffering as a result of the difficult campus environment which Duke itself created, Duke purposefully "duped" her into withdrawing from school and treated a request for temporary leave as a mechanism to permanently rid themselves of a student complaining about the University's response to her rape. Ms. Rouse alleges that she suffered severe emotional distress that manifested itself after the December 18 letter.[3] (Doc. 5 at 13 ¶ 75.) Viewing her Amended Complaint in its entirety, Ms. Rouse has stated a claim for intentional infliction of emotional distress against Duke.

C. Breach of Contract

Ms. Rouse claims that Duke breached its educational contract with her. Duke maintains that Ms. Rouse's breach-of-contract claim is time-barred. The statute of limitations for breach of contract in North Carolina is three years. *See* N.C. Gen. Stat. § 1-52(1); *Miller v. Randolph*, 124 N.C. App. 779, 781, 478 S.E.2d 668, 670 (1996). The penultimate act of Duke University at issue here—telling Ms. Rouse that she could not come back to school at Duke—occurred within that three-year statute of limitations and is not time-barred. To the extent Ms. Rouse contends

---

[3] As noted above, she cannot recover for any emotional distress which manifested before December 17. That does not mean, however, that those allegations are necessarily irrelevant, since they provide context and may show intent and motive on Duke's part.

prior actions breached her contract with the University, those aspects of her claim are barred by the statute of limitations.

Duke also asserts that Ms. Rouse has failed to state a claim for breach of contract. Ms. Rouse alleges that by constructively expelling her, Duke breached the following promises made to her as part of her decision to enroll: to "prohibit discrimination and harassment . . . and not tolerate harassment of any kind"; "that no student may be expelled for the conduct of others"; that "harassment on the basis of gender . . . [is] expressly forbidden"; "to prevent or aid in preventing ongoing harassment . . . [that] interferes significantly with an individual's . . . education"; "not to retaliate against any person for making a claim of rape or sexual misconduct against another person"; not to punish a student "except upon clear and convincing proof that a policy violation occurred and the accused committed it"; and to deal with her in good faith. (Doc. 5 at 10-11 ¶ 61 (brackets omitted) (internal quotation marks omitted).) She contends that these policies were in writing in the undergraduate student bulletin and the Duke Community Standard.

In *McFadyen v. Duke University*, the court noted that "courts in this district have repeatedly concluded that a university's academic bulletins and policies cannot be the basis of a breach of contract claim unless the bulletin or policy provision is a specific, enforceable promise that is incorporated into the terms of a contract between the university and the student." 786 F. Supp. 2d 887, 982 (M.D.N.C. 2011) (collecting cases). In that case, somewhat similarly to this one, the plaintiffs alleged that Duke breached its contract with students in two ways: 1) by condoning and ratifying harassment of the plaintiffs by students and staff on campus; and 2) by suspending the students without following Duke's disciplinary procedures. In that case, the plaintiffs relied on the same written materials as the Plaintiff in this case.

11

In *McFadyen,* the court concluded that:

> there are no factual allegations to support the contention that any general policy against harassment created any specific, enforceable contractual obligations upon Duke. A general policy against harassment does not provide any indication of any mutual agreement between Duke and the students, and Plaintiffs have not alleged any facts that would indicate any intent by Duke to be bound to any particular obligation or course of conduct based on a general policy against harassment.

*Id.* at 982-83. On the other hand, the court concluded that the Plaintiffs were entitled to proceed on their contract claims based on failure to follow specific established disciplinary procedures before suspending a student, though no cause of action existed for the disciplinary decision itself. *Id.* at 983.

Applying this same reasoning to Ms. Rouse's claims here, her contract claims based on assurances that Duke would "prohibit discrimination and harassment . . . and not tolerate harassment of any kind" and would "prevent or aid in preventing ongoing harassment . . . [that] interferes significantly with an individual's education," and that "harassment on the basis of gender . . . [is] expressly forbidden" are too general to be enforceable as a matter of contract in the absence of more specific allegations not present in this Amended Complaint. While her remaining claims vaguely appear to arise in connection with Duke's disciplinary system, she has not alleged any specific promises that were made and not followed.[4]

Ms. Rouse arguably makes another breach of contract claim, alleging that the December 18 letter violated the terms of the enrollment agreement that she had with the University. (Doc. 5 at 6 ¶ 38.) Specifically, Ms. Rouse has alleged that she never sought to withdraw from Duke to complete her undergraduate degree elsewhere, which is the only reason Duke had for refusing to

---

[4] In *McFadyen*, there was a specific allegation that Duke University suspended McFadyen unilaterally and without notice, hearing or inquiry even though he was entitled to notice and a hearing within three days. 786 F. Supp. 2d at 913.

let her return to school at Duke.  (*See* Doc. 23-1.)  Thus, Ms. Rouse contends that Duke breached her enrollment agreement by unilaterally declaring Ms. Rouse ineligible for readmission to the University.

A current student in good standing who is paying her tuition and other fees would seem to have a contractual right to return to school, nothing else appearing.  Ms. Rouse has alleged facts supporting her contention that the reason Duke asserted for terminating her status as a student were not factually correct.  This claim states a cause of action and may proceed.

D.  Hostile Environment

The parties appear to agree that the statute of limitations for a claim of a hostile educational environment under Title IX, 20 U.S.C. §§ 1681-88, is the three-year statute borrowed from North Carolina personal injury law.  *See Wilmink v. Kanawha Cnty. Bd. of Educ.*, 214 F. App'x 294, 296 n.3 (4th Cir. 2007) (per curiam) ("[E]very circuit to consider the issue has held that Title IX . . . borrows the relevant state's statute of limitations for personal injury."); *see also* N.C. Gen. Stat. § 1-52(16); *Pompano Masonry Corp.*, 165 N.C. App. at 409, 598 S.E.2d at 613.

The parties also appear to agree that while state law determines the limitations period, federal law determines when a Title IX claim accrues.  *See Stanley v. Trs. of the Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006); *Brown v. Castleton State Coll.*, 663 F. Supp. 2d 392, 397 n.3 (D. Vt. 2009).  Ms. Rouse contends that this Title IX claim should be evaluated like a Title VII claim in determining when a claim accrues, such that a hostile environment claim "is comprised of a series of separate acts that collectively constitute one unlawful . . . practice," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (internal quotation marks omitted), and that a hostile environment claim may be brought any time within the statutory

13

period of any act contributing to the hostile environment claim. *Id.* Duke contends that Title VII case law is not analogous here because it relies on statutory language not present in Title IX.

"Federal courts, beyond interpretation of the statutory language, look to cases decided under Title VII to inform an analysis under Title IX." *Jennings v. Univ. of N.C. at Chapel Hill*, 240 F. Supp. 2d 492, 499 (M.D.N.C. 2002). In that case, which involved allegations of several different "groups" of discriminatory acts, the court, in ruling on various Rule 12 motions to dismiss, held that:

> any of the Plaintiff's claims under § 1983 and Title IX that are based on discrete acts of misconduct predating August 25, 1995 are time barred. However, any claims based on a single hostile environment practice with at least one constituent act occurring after August 25, 1995, are timely.

*Id.* at 500. For purposes of this Motion,[5] this Court will follow the same rule. Ms. Rouse has only one claim for a hostile environment practice arising out of the circumstances surrounding and following the February rape. One constituent act, the sending of the December 18, 2007, letter occurred within the statute of limitations. Therefore, the Motion should be denied as to this claim to the extent it is based on the statute of limitations.

Duke also contends that Ms. Rouse has failed to state a claim for hostile environment under Title IX.

> To establish a Title IX claim on the basis of sexual harassment, a plaintiff must show that (1) she was a student at an educational institution receiving federal funds, (2) she was subjected to

---

[5] The cases on exactly whether and how the continuing-violation theory should be applied in Title IX litigation do not give rise to a clear consensus of opinion. *Brown*, 663 F. Supp. 2d at 399-402; *Walter v. Hamburg Cent. Sch. Dist.*, No. 04-CV-996S, 2007 U.S. Dist. LEXIS 36611, at *20-22 (W.D.N.Y. May 18, 2007); *AB v. Rhinebeck Cent. Sch. Dist.*, 361 F. Supp. 2d 312, 314-16 (S.D.N.Y. 2005); *Folkes v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*, 214 F. Supp. 2d 273, 287-91 (E.D.N.Y. 2002); *cf. Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) (holding that Title IX claims by student against a university for sexual harassment are evaluated under standards similar to those applied in cases under Title VII). This issue may bear further consideration at summary judgment when the facts may be clearer.

> harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution.

*Jennings. v. Univ. of N.C.*, 482 F.3d 686, 696 (4th Cir. 2007) (en banc); *see also Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999).

Duke contends that "[a] primary difference between this case and other hostile environment cases is that Ms. Rouse's attacker was not affiliated with Duke at all. Title IX requires that the institution have actual knowledge of the harassment and the ability to remedy the hostile environment." (Doc. 16 at 18.) This misses the point. The Court does not read the Amended Complaint to allege that the rape itself caused, or was the result of, the hostile environment, but rather that Duke's response to the rape created, at least in large part, and reinforced the hostile environment.

Read as a whole, the complaint alleges: that Ms. Rouse was subject to harassment and humiliation on campus as a result of being a white woman who accused a black man of rape; that this was made worse by Duke's suggestions that she was to blame for the rape and by circumstances surrounding an unrelated false claim of rape made by another woman against Duke students; that Dr. Moneta, Dean McKay, and other administrators at Duke were aware of her situation, did nothing to help or reduce the campus atmosphere against her, and in fact made it worse by false accusations that she was complicit in her own rape and by failing to investigate the fraternity at whose house the rape occurred; and that these actions by Duke and its administrators continued over time in the face of Ms. Rouse's repeated requests for assistance, and culminated in the University's successful trickery to get rid of a troublesome female student who objected to how rape victims were treated on campus. These allegations are sufficient to state a claim for hostile educational environment based on gender and race discrimination. *See,*

*e.g.*, *Doe v. Erskine Coll.*, No. 8:04-23001-RBH, 2006 U.S. Dist. LEXIS 35780, at *33-40 (D.S.C. 2006).

## CONCLUSION

For the reasons stated herein, the Defendants' Motion is granted as to all claims asserted against the Defendant Larry Moneta, which are barred by the statute of limitations. The Motion is denied as to the Plaintiff's claims against Duke University for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress to the extent those claims arise from the sending of the December 18, 2007 letter, and denied as to the claim for hostile educational environment. The Motion is otherwise granted, and all other claims are dismissed.

SO ORDERED.

This the 5th day of April, 2012.

_____
UNITED STATES DISTRICT JUDGE